**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-01431 (JCH) |
| v. | : | |
| | : | |
| CHRISTOPHER SIMONELLI, ET AL | : | JULY 28, 2014 |
| Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 69)**

**I.    INTRODUCTION**

State Farm Mutual Automobile Insurance Company ("State Farm") brings this action seeking a declaratory judgment that it has no obligation under its automobile liability policy ("Policy") with Mailex Corporation ("Mailex") to defend or indemnify Christopher Simonelli ("Simonelli") in a series of lawsuits resulting from an incident on November 16, 2010.  Amended Complaint ("Am. Compl.") (Doc. No. 17) ¶¶ 1, 2, 19, 113.  On November 1, 2013, State Farm filed a Motion for Summary Judgment ("Pl.'s Mot. for Summ. J.") (Doc. No. 69).  Defendants Benedetto and Audrey Napoleone ("Napoleones") object to State Farm's Motion on the grounds that there are genuine issues of material fact regarding: (1) whether Simonelli had Mailex's permission or consent to operate the company vehicle at the time of the incident; and (2) whether Simonelli intended to cause the injuries that occurred.  Defendants' Objection to Motion for Summary Judgment ("Defs.' Obj. to Mot. for Summ. J.") (Doc. No. 76).

For the reasons stated below, State Farm's Motion for Summary Judgment (Doc. No. 69) is **DENIED**.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

On November 16, 2010, Simonelli was a part-time employee of Mailex, where he worked as a driver and in the office.  Plaintiff's Local Rule 56(a)(1) Statement ("Pl.'s L.R. 56(a)(1) Stmt.") (Doc. No. 69–3) ¶ 72; Defendants' Local Rule 56(a)(2) Statement ("Defs.' L.R. 56(a)(2) Stmt.") (Doc. No. 76–3) ¶ 72.  At some point during his shift, Simonelli took the keys for the company box truck, drove onto CT Transit property, and drove directly into a locked gate.  Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3) ¶ 73-74; Defs.' L.R. 56(a)(2) Stmt. (Doc. No. 76–3) ¶ 73-74.  Simonelli then backed up and drove into the gate again, and this time the truck broke through the gate and continued onto Myrtle Avenue.  Id.  This part of the incident was captured on a security camera and viewed by the Stamford Police Department.  Id.

Once on Myrtle Avenue, Simonelli drove on the wrong side of the road and struck a vehicle, causing it to collide with a parked car.  Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3) ¶ 75; Defs.' L.R. 56(a)(2) Stmt. (Doc. No. 76–3) ¶ 75.  He then turned onto East Main Street, where he hit several more vehicles.  Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3) ¶¶ 76-78; Defs.' L.R. 56(a)(2) Stmt. (Doc. No. 76–3) ¶¶ 76-78.  The truck then swerved across the road onto the opposite sidewalk and struck a parking meter, a city-owned garbage can, and a street sign.  Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3) ¶ 79; Defs.' L.R. 56(a)(2) Stmt. (Doc. No. 76–3) ¶ 79.  Lastly, Simonelli struck a school bus, causing it to swerve into a dump truck.  Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3) ¶ 80; Defs.' L.R. 56(a)(2) Stmt. (Doc. No. 76–3) ¶ 80.

---

[1] The factual background in the Plaintiff's Local Rule 56(a)(1) Statement ("Pl.'s L.R. 56(a)(1) Stmt.") (Doc. No. 69–3) and the Defendants' Local Rule 56(a)2 Statement ("Defs.' L.R. 56(a)(2) Stmt.") (Doc. No. 76–3), is largely informed by the Arrest Warrant Application and accompanying affidavit executed on December 2, 2010.  See Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3), Ex. H.

Following the incident, the Stamford Police Department obtained a search warrant and viewed Simonelli's toxicology test from the Stamford Hospital Laboratory. Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3) ¶ 81; Defs.' L.R. 56(a)(2) Stmt. (Doc. No. 76–3) ¶ 81.  The report indicated that Simonelli had PCP in his system when he was admitted to the hospital shortly after the incident.  Id.

On December 9, 2010, Simonelli was arrested based on this incident and was charged with four counts of evading responsibility and one count of illegal operation of a motor vehicle while under the influence of drugs or alcohol.  Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69–3) ¶ 83; Defs.' L.R. 56(a)(2) Stmt. (Doc. No. 76–3) ¶ 83.  On March 7, 2014, Simonelli pled guilty to four counts of assault in the first degree, in violation of Conn. Gen. Stat. § 53a-59(a)(3).  Plaintiff's Supplemental Brief in Support of its Motion for Summary Judgment ("Pl.'s Suppl. Brief in Supp.") (Doc. No. 78-1) at 1.

## III.   STANDARD OF REVIEW

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact."  Id.  In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). Once the moving party has satisfied that burden, to defeat the motion "the

party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir. 2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor).  "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

## IV.    DISCUSSION

"Under Connecticut law, it is well established that a liability insurer has a duty to defend its insured if the pleadings" against the insured "allege a covered occurrence." Ryan v. Nat'l Union Fire Ins. Co., 692 F.3d 162, 167 (2d Cir. 2012) (quoting Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457 (2005) (alterations omitted)).  "In determining whether a claim falls within the scope of an insurance policy, the Supreme Court of Connecticut 'construes broad policy language in favor of imposing a duty to defend on the insurer,' and 'requires a defense if an allegation of the complaint falls even possibly within the coverage.'" Id. (quoting Hartford Cas. Ins. Co., 274 Conn. at 466 (2005) (alterations omitted)).

"[A]n insurer's duty to defend is measured solely by whether the complaints against the insured allege facts that, if proven true, would present a claim within the scope of the policy's coverage.  It is well settled that an insurer's duty to defend, being

4

much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint." <u>Coregis Ins. Co. v. American Health Found.</u>, 241 F.3d 123, 127 (2d Cir. 2001) (internal citations and quotation marks omitted) (quoting <u>Springdale Donuts, Inc. v. Aetna Cas. and Sur. Co.</u>, 247 Conn. 801, 807 (1999)).  "[T]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured." <u>Middlesex Ins. Co. v. Mara</u>, 699 F. Supp. 2d 439, 448 (D. Conn. 2010) (quoting <u>Hartford Cas. Ins. Co.</u>, 274 Conn. at 463)).  "[W]hen an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the underlying complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." <u>VT Mut. Ins. Co. v. Ciccone</u>, 900 F. Supp. 2d 249, 273 (D. Conn. 2012).  "In insurance cases, summary judgment may be granted as to the extent of coverage as a matter of law." <u>Mara</u>, 699 F. Supp. 2d at 445.

     A.     <u>Duty to Defend: Consent/Permission to Use the Company Truck</u>

State Farm first argues that it has no duty to defend Simonelli because he was not an insured under the Policy.  Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment ("Pl.'s Mem. in Supp. of Summ. J.") (Doc. No. 69-1) at 28.  The Policy between State Farm and Mailex defines an insured, <u>inter alia</u>, as one who uses Mailex's vehicle "within the scope of [Mailex's] consent." <u>Id.</u>  State Farm argues that Simonelli does not meet this definition because he "did not have permission to take the box truck in question at the time of the accident." <u>Id.</u>

In order to establish Simonelli's lack of permission, State Farm relies on an affidavit from the president of Mailex, Ellen Connery, who was at the office the day of the incident.  Id.  In her affidavit, Connery claims that Simonelli was working his regular shift, but that "[h]e was not scheduled to drive until 4pm."  Id. at Ex. J.  Because Simonelli took the box truck around 2:30 pm, Connery claims that Simonelli "did not have Mailex Corporation's permission to operate any of the Mailex motor vehicles at the time of the accident."  Id.

In response, the Napoleones argue that Connecticut state law creates a statutory presumption that "Mr. Simonelli as the operator of the vehicle was the agent/servant of Mailex and was operating it in the course of employment."  Defendants' Memorandum of Law in Opposition to Motion for Summary Judgment ("Defs.' Mem. in Opp.") (Doc. No. 76-1) at 3.  The Napoleones cite Conn. Gen. Stat. § 52-183 as the source of this presumption, which states:

> In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The defendant shall have the burden of rebutting the presumption.

Furthermore, as the Napoleones note, Connecticut courts have held that the simple assertion by the owner of the vehicle that the operator did not have permission is insufficient to rebut this statutory presumption.[2]  Defs.' Mem. in Opp. (Doc. No. 76-1) at

---

[2] The Napoleones fail to address that section 52-183 contemplates a different set of parties than those in the present case.  The statute specifies that it applies to a "civil action brought against the owner of a motor vehicle to recover damages."  In this case, however, the action is brought by the owner's insurer for declaratory judgment against the operator and the victims.  The Napoleones cite no legal precedent to support extending the scope of section 52-183 to include a different set of parties than those specified in the statute.

3 (citing <u>Brown v. Hunter</u>, No. CV92-0516942, 1994 WL 29994 (Conn. Super. Ct. Jan. 20, 1994).

      The court finds that the moving party—State Farm—has failed to meet its burden of establishing the absence of any genuine issue of material fact.  The record remains unclear regarding the scope of Simonelli's permission to use the truck at the time of the incident.

      First, the only evidence that State Farm presents to corroborate its claim that Simonelli did not have permission is an affidavit from Connery.  Pl.'s Mem. in Supp. of Summ. J. (Doc. No. 69-1) at Ex. J.  However, Connery's testimony that Simonelli only had consent to operate the truck at 4:00 pm, and not at 2:30 pm, merely constitutes a conclusory denial.  <u>Id.</u>  Connery's allegations do not provide specific facts or details to clarify the type of vehicular use that falls within the scope of Mailex's consent.  For instance, she does not claim that Mailex's policies prohibited employees from using company vehicles outside of the time specified in the schedule.  This leaves open the possibility that Mailex allows drivers to leave ahead of schedule when possible.  Because Connery's allegations are merely a bald denial of permission, it remains unclear whether Simonelli's use of the truck one and a half hours before schedule constitutes unauthorized use.

      Second, there is a factual discrepancy regarding Simonelli's typical use of the box truck.  State Farm indicates that Simonelli may have been "occasionally a driver for Mailex Corporation."  Pl.'s Mem. in Supp. of Summ. J. (Doc. No. 69-1) at 29.  However, Simonelli's Arrest Warrant Application says: "Mrs. Connery told Officer Butler that Simonelli was working his regular shift at the company that day, she said he <u>normally</u>

works as a part time driver, but was also helping in the office today."  Pl.'s Mem. in

Supp. of Summ. J. (Doc. No. 69-4) Ex. H, at 3 (emphasis added).  This inconsistency

obscures the nature of Simonelli's permission to use the truck.

Because the facts alleged are insufficient to indisputably resolve the question of

Simonelli's permission, a genuine issue of material fact remains in this regard.

    B.    <u>Duty to Defend: The Nature of Simonelli's Actions</u>

        1.    Intentional Acts

State Farm next argues that, even if Simonelli had permission to use the truck,

the case should still be decided on summary judgment because Simonelli's actions: (1)

do not constitute an "accident" under the Policy; and (2) are excluded from coverage

because they were intentional acts.  Pl.'s Mem. in Supp. of Summ. J. (Doc. No. 69-1) at

30, 34.  Both of these arguments hinge on the claim that Simonelli's actions were

intentional rather than reckless or negligent.  <u>See, e.g.</u>, <u>Allstate Ins. Co. v. Wilson</u>, Civil

No. 3:12cv1398 (JBA), 2014 WL 1762055, at *3 (D. Conn. April 30, 2014) ("The

Connecticut common law definition of 'accident' focuses on lack of intent.").

State Farm fails to establish that it has no duty to defend Simonelli under this

intentional act theory. As an initial matter, the underlying complaints plausibly allege that

Simonelli's conduct was negligent or reckless, not intentional.  State Farm's duty to

defend Simonelli arises if "the complaint states a cause of action which appears on its

face to be within the terms of the policy coverage."  <u>Middlesex Ins. Co. v. Mara</u>, 699 F.

Supp. 2d 439, 449 (D. Conn. 2010) (citing <u>Imperial Cas. and Indem. Co. v. State</u>, 246

Conn. 313, 324 (1998))).  Because all of the five underlying complaints plausibly allege

conduct that is negligent or reckless, they are facially within the terms of the Policy

coverage.[3]  However, State Farm correctly contends that the legal characterizations

provided in the underlying complaints are not dispositive if they do not accurately

represent the nature of the factual allegations.  See Pl.'s Mem. in Supp. of Summ. J.

(Doc. No. 69-1) at 36.  Indeed, "Connecticut courts look past the terminology in pleading

to grant summary judgment for the insurer, holding there is no duty to defend a

negligence action which is actually based on intentional acts by the insured."  Mara, 699

F. Supp. 2d at 456.

   However, State Farm fails to apply the appropriate standard to make such a

determination.  In order to find that Simonelli's actions were intentional—in spite of the

fact that the underlying complaints allege negligence and recklessness—"two elements

are necessary: (1) the insured must have intended to commit the act and (2) to commit

the injury that resulted."  Mara, 699 F. Supp. 2d at 450 (citing Amex Assur. Co. v.

Horobin, No. CV 970258572, 1998 WL 328428, at *2 (Conn. Super. Ct. June 15,

1998)).[4]  While the factual allegations may meet the first element, State Farm has failed

to demonstrate the second element.

---

   [3] The court notes that two of the underlying complaints—Byxbee v. Simonelli and Barrera v.
Simonelli—allege, in the alternative, that Simonelli's conduct was "deliberate and/or reckless."  Pl.'s L.R.
56(a)(1) Stmt. (Doc. No. 69-4), Ex. C, Count Four ¶ 7, Count Five ¶ 9, Count Six ¶ 9; Ex. E, Count Two ¶
9, Count Five ¶ 9, Count Eight ¶ 9.  This terminology does not remove these complaints from within the
scope of the Policy, because the conditional language allows the complaints to be construed as alleging
reckless conduct, without deliberate conduct ("or").

   [4] State Farm cites Providence Washington Ins. Group v. Albarello, 784 F. Supp. 950, 953 (D.
Conn. 1992), for the proposition that "the focus is on whether the event causing the injury was accidental,
not on whether the injury was accidental because the damages were unintended."  Plaintiff's Reply to
Defendant's Objection to Motion for Summary Judgment (Doc. No. 77) at 6-7.  As an initial matter, this
citation is not from Albarello, but rather from Carvey v. Aetna Cas. & Sur. Co., No. CV970481512, 2001
WL 576660, at *7 (Conn. Super. Ct. May 7, 2001).  Although Albarello and Carvey deemphasize the
insured's intent to cause the harm that resulted, this court follows the reasoning of Mara and other cases
that require such intent.  See, e.g., Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 108–09 (1994) ("A
result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that
to a substantial certainty such a result will ensue . . . . Both the act producing the injury and the resulting

The second element—intent to cause the injury that resulted—may be "inferred at law in circumstances where the alleged behavior in the underlying action is so inherently harmful that the resulting damage is unarguably foreseeable." Id. at 450. Our courts apply this legal inference to limited circumstances where the nature of the defendant's acts inherently included the desire to cause the harm that resulted. See, e.g., United Nat. Ins. Co. v. Tunnel, Inc., 988 F.2d 351 (2d Cir. 1993) (affirming summary judgment granted to insurer, holding insurer had not duty to defend defendant against allegations of a battery that left the victim in a comma for two weeks); Allstate Ins. Co. v. Wilson, Civil No. 3:12cv1398 (JBA), 2014 WL 1762055 (D. Conn. April 30, 2014) (granting summary judgment to insurer, holding insurer had no duty to defend where defendant's forcible sexual assault excluded the insured from coverage under the intentional acts exclusion); Mara, 699 F. Supp. 2d 439 (granting summary judgment to insurer, holding insurer had no duty to defend where defendant's racially-motivated harassment of his neighbors for over a year was excluded as an intentional act); Middlesex Mut. Assur. Co. v. Hitchcock, No. CV 990431600, 2000 WL 288279 (Conn. Super. Ct. Mar. 8, 2000) (granting summary judgment to insurer, holding insurer had no duty to defend where defendant's series of harassing and obscene telephone calls were excluded because such calls could not be deemed unintentional).

In the present case, State Farm fails to established the absence of a material issue of fact as to whether Simonelli intended to cause the harm that resulted from the November 16, 2010 incident: 14 vehicle collisions involving approximately 33 people.

---

injury must be intentional."); Markey v. Santangelo, 195 Conn. 76, 77 (1985) ("Not only the action producing the injury but the resulting injury must be intentional.").

See Pl.'s L.R. 56(a)(1) Stmt. (Doc. No. 69-4), Ex. G, at 18.  Instead, State Farm's mainly argues that Simonelli intended to commit the acts that comprised the incident.  See Pl.'s Mem. in Supp. of Summ. J. (Doc. No. 69-4) at 35 ("It is inconceivable that an individual could *accidentally* consume drugs, *accidentally* take a vehicle from his employer's workplace without permission, *accidentally* break through a closed gate to remove the vehicle from the premises and *accidentally* drive erratically striking over 10 vehicles including a school bus.").  However, this argument exclusively focuses on the first element and disregards the second.  When State Farm does address Simonelli's intent to cause the harm that resulted, it cites an inapposite case and concludes that Simonelli's conduct falls within the intentional acts exclusion because he "inflicted foreseeable harm."  Pl.'s Mem. in Supp. of Summ. J. (Doc. No. 69-4) at 37-38 (citing Allstate v. Linarte, No. HHBCV054005150S, 2007 WL 1677444, (Conn. Super. Ct. May 24, 2007)).

Voluntarily driving while under the influence of PCP certainly constitutes a flagrant disregard for the safety of others.  However, without additional facts, it does not of itself denote an intention to harm others.  Unlike the physical beating in Tunnel, Inc. that left the victim in a coma for two weeks, Simonelli's act of driving the truck while on PCP does not inherently demonstrate an intent to cause the harm to persons and property that resulted.  988 F.2d at 352.  For instance, Simonelli may have elected to drive the truck because he was in a rush to get from point A to point B.  While there may exist evidence that Simonelli took the Mailex truck with the intent to cause the harm that resulted, such evidence has not been sufficiently presented to support a conclusion that no material issue of fact remains in this regard.

11

2.      Guilty Plea to Assault Charges Arising from the Incident

State Farm filed a supplemental brief on April 10, 2014, in response to Simonelli's March 7, 2014 guilty plea to charges of assault arising from the incident. Pl.'s Suppl. Brief in Supp. (Doc. No. 78-1).  State Farm argues that the mental state Simonelli admitted to in his guilty plea is equivalent to the mental state that bars him from coverage under the "expected or intended acts" exclusion in the Policy.  Id. at 2-5. At his March 7 hearing, Simonelli pled guilty to violating Conn. Gen. Stat. § 53a-59(a)(3), which states: "A person is guilty of assault in the first degree when . . . under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."  State Farm argues that Simonelli's admission of recklessness is equivalent to the "intentional conduct" that is excluded from coverage under the Policy.  Pl.'s Suppl. Brief in Supp. (Doc. No. 78-1) at 4.  In support of this claim, State Farm cites Dubay v. Irish, which states: "Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct."  207 Conn. 518, 533 n.8 (1988) (quoting State v. Alterio, 154 Conn. 23, 25-26 (1966)).

Although State Farm interprets this citation to support the proposition that reckless conduct constitutes intentional conduct, the court in Dubay did not intend it that result.  Rather, the Dubay court used this citation to establish that "willful, wanton or reckless, in practice . . . [mean] the same thing."  Id. at 533.  Moreover, there is a longstanding distinction between intentional and reckless conduct in Connecticut statutory law and court precedent.  See Conn. Gen. Stat. § 53a-3(11), (13) ("A person

acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . . A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.  The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.").  Most compelling support for this court's view is the Connecticut Supreme Court's post-Dubay decision, Carpenter v. Commissioner of Correction, 290 Conn. 107 (2009).  There, the Court stated, "intentional conduct and reckless conduct are 'mutually exclusive,' such that they cannot exist simultaneously with respect to the same act."  Id. at 125.

Because reckless conduct is distinct from intentional conduct, Simonelli's admission of recklessness does not, of itself, constitute intentional conduct that bars him from coverage under the Policy.  On the contrary, because intentional conduct and reckless conduct are "mutually exclusive, such that they cannot exist simultaneously with respect to the same act," Carpenter, 290 Conn. at 125, Simonelli's admission of recklessness suggests that his conduct was not intentional.  It certainly does not eliminate all issues of material fact in this case.

    C.    Duty to Indemnify

In addition to the duty to defend, State Farm seeks declaratory judgment that it does not have the duty to indemnify Simonelli.  Pl.'s Mem. in Supp. of Summ. J. (Doc.

13

No. 69-1) at 1.  The court concludes that State Farm's declaratory judgment action with respect to its duty to indemnify is premature.

"In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case."  Board of Educ. of City of Bridgeport v. St. Paul Fire and Marine Ins. Co., 261 Conn. 37, 48-49 (2002) (citing Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 66 (1st Cir. 2000)).  "The duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy."  Cambridge Mutual Fire Ins. Co. v. Ketchum, Civil Action No. 3:11–cv–00743 (VLB), 2012 WL 3544885, at *6 (D. Conn. Aug. 16, 2012) (emphasis in the original).  "The duty to defend and the duty to indemnify are separable issues, and it is not required that they be decided at the same time."  Id.  "Indeed the Connecticut Supreme Court has held that granting a declaratory judgment on the issue of indemnification is improper when the underlying action is still pending and the duty to defend the insured has arisen."  Id. at *7.

Because the duty to indemnify in the present case depends on the factual basis upon which judgment, if any, is rendered against Simonelli in the underlying state court cases, a ruling on the duty to indemnify is premature at this time.

## V.    CONCLUSION

For the reasons set forth above, the court **DENIES** State Farm's Motion for Summary Judgment (Doc. No. 69).

The court is considering administratively closing this case, pending resolution of the underlying state cases that have been filed against Simonelli in state court.  Once

14

these cases are resolved, the parties would have the right to reopen.  If any party

objects to such administrative closing, it/they should file an objection by **AUGUST 11,**

**2014**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of July, 2014.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge

15